SIXTH DIVISION
 March 31, 1997

No. 1-95-3026

LOUIS APOSTAL, Supervised Administrator of )
the Estate of Flavio Ramos, and DELPHINA ) Appeal from
LOPEZ, as Mother and Next Friend of Patricia ) the Circuit Court
Ramos and Braulio Ramos, ) of Cook County.
 )
 Plaintiffs-Appellants, )
 )
 v. )
 ) No. 90-L-16294
OLIVERI CONSTRUCTION COMPANY, )
 )
 Defendant, )
 )
 and )
 ) Honorable
SPIEGEL, INC., ) Gary L. Brownfield,
 ) Judge Presiding.
 Defendant-Appellee. )

 JUSTICE THEIS delivered the opinion of the court:

 Louis Apostal, the supervised administrator of the estate of
Flavio Ramos, and Delphina Lopez, as mother and next friend of
Patricia Ramos and Braulio Ramos (Apostal), appeal the trial court's
order granting summary judgment in favor of defendant-appellee
Spiegel, Inc. (Spiegel). Apostal sued Spiegel, the premises owner,
alleging claims under the Illinois Structural Work Act and common law
negligence for injuries sustained by plaintiffs' decedent, Flavio
Ramos, while Ramos was working on a demolition project. Ill. Rev.
Stat. 1989, ch. 48, par. 60 et seq. (Repealed). The trial court
granted summary judgment in favor of Spiegel, finding that it was not
"in charge" of the worksite. Thus, the court held that Spiegel was
not liable under the Structural Work Act and did not owe Ramos a
common law duty of care. We affirm the decision of the trial court.
 Spiegel owns property located at 1105 West 35th Street in
Chicago, Illinois. Spiegel hired Oliveri Construction Company
(Oliveri) as general contractor to conduct excavation and demolition
work for certain buildings on the property. Oliveri, in turn, hired
G.M. Wrecking Company (G.M. Wrecking) to demolish the building in
question. On June 12, 1990, two employees of G.M. Wrecking were
demolishing the building. David Martin, the crane operator, knocked
the building with the wrecking ball. Flavio Ramos hosed down the
debris to keep the dust from obscuring the demolition work. Ramos was
standing near the crane and within 30 feet of the building. As Martin
was "balling" the building, a pipe flew out of the debris and struck
Ramos in the chest. Ramos later died from the injury.
 Apostal initially filed suit against Oliveri and G.M. Wrecking,
alleging violations of the Structural Work Act. Ill. Rev. Stat. 1989,
ch. 48, par. 60 et seq. Apostal also claimed that defendants were
liable for common law negligence allowing recovery under the Wrongful
Death Act (Ill. Rev. Stat. 1989, ch. 70, par. 1 et seq.) and the
Survival Act (Ill. Rev. Stat. 1989, ch. 110 1/2, par. 27-6 et seq.).
Apostal later added Spiegel as a defendant. Apostal settled with
Oliveri and G.M. Wrecking.
 Spiegel filed a motion for summary judgment. The trial court
granted Spiegel's motion for summary judgment on all counts finding
Spiegel was not "in charge of" of the worksite as required under the
Structural Work Act. Because Spiegel was not in charge of the
worksite, the court further found that Spiegel did not owe Ramos a
common law duty of care on which to impose negligence liability. On
appeal, Apostal argues that: (1) Spiegel "had charge" of the worksite
sufficient to impose liability under the Structural Work Act; and (2)
because demolition is an ultrahazardous activity, Spiegel owed a non-
delegable duty to the decedent to take special precautions to ensure
his safety. For the reasons that follow, we affirm.
 We first acknowledge the recent debate as to the viability of
Structural Work Act claims brought after February 14, 1995, the
effective repeal date of that statute. Until our supreme court
resolves the issue, however, we will continue to give effect to the
savings clause in the repeal's preamble. Atkins v. Deere Co. and
Kienitz v. Bradley & Bradley, Inc., Nos. 82220 and 82221, consolidated
appeal granted. 
 The trial court's grant of summary judgment in favor of Spiegel
is reviewed under a de novo standard. Outboard Marine Corp. v.
Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102, 607 N.E.2d 1204,
1209 (1992). All reasonable factual inferences will be drawn in
Apostal's favor. If the pleadings, depositions, and affidavits fail
to raise a genuine issue of material fact, then summary judgment is
proper. 735 ILCS 5/2-1005(c) (West 1994); American National Bank &
Trust Co. of Chicago v. National Advertising Co., 149 Ill. 2d 14, 22,
594 N.E.2d 313, 316 (1992). 
 To prevail on a Structural Work Act claim, a plaintiff must
prove: (1) he was involved in a structural activity; (2) the activity
was being performed with reference to a structure; (3) a scaffold or
other mechanical device was being used; (4) a defect existed in the
construction or use of the device; (5) the defect proximately caused
his injuries; (6) the defendant had charge of the work; and (7) the
defendant willfully violated the Act's safety standard. Cockrum v.
Kajima International, Inc., 163 Ill. 2d 485, 491, 645 N.E.2d 917, 920
(1994). On appeal, the issue is whether Spiegel "had charge" of the
work.
 Whether a person "had charge" of the work ordinarily is a
question of fact unless the evidence presented is insufficient to
create a genuine disputable issue. Burger v. Prairie Development,
Ltd., 218 Ill. App. 3d 814, 819, 578 N.E.2d 1113, 1115 (1991). 
Whether a person had control or "had charge" is determined from 10
factors first enumerated in Chance v. City of Collinsville. Cockrum
v. Kajima International, Inc., 163 Ill. 2d 485, 492-93, 645 N.E.2d
917, 920 (1994), citing Chance v. City of Collinsville, 112 Ill. App.
3d 6, 445 N.E.2d 39 (1983). Typically, however, the "in charge"
analysis focuses on (1) actual or clearly implied control and
supervision over the construction; and (2) responsibility for job
safety. Burger, 218 Ill. App. 3d at 820, 578 N.E.2d at 1116.
 The facts support the trial court's determination that Spiegel
did not control or supervise the worksite. G.M. Wrecking used its own
equipment and operators. David Martin, the crane operator for G.M.
Wrecking, stated that he never asked anyone from Spiegel for direction
regarding the work. If Martin had any questions or problems with
regard to the demolition work, he would ask his father, Gordon Martin,
the owner of G.M. Wrecking. Martin likewise stated that Spiegel's
project manager made periodic visits to the site to see how things
were going. The visits typically lasted 5 to 10 minutes. 
 Spiegel's project manager, Dean Shelato, also stated that Spiegel
never assumed responsibility for the supervision or control of the
project, let alone the safety of the employees of G.M. Wrecking.
Shelato said he would make weekly visits to the site to see how things
were progressing. Beyond those inspections, Spiegel was not familiar
with the work practices of G.M. Wrecking. Spiegel never gave G.M.
Wrecking employees direction as to how to do their job.
 On these facts, there is nothing to indicate Spiegel exercised
actual control or supervision of the worksite. Spiegel's weekly
inspection does not establish actual control or responsibility for job
safety. And Spiegel's general familiarity with construction practices
is too vague a factor to be determinative. Burger, 218 Ill. App. 3d
at 820, 578 N.E.2d at 1116. We agree with the trial court that
Spiegel never exercised actual supervision or control over the
worksite.
 The closer question is whether the contract between Spiegel and
Oliveri, the general contractor, indicates that Spiegel "had charge"
of the worksite. The contract consisted of the agreement, the plans
and specifications, work change orders, and safety rules for
contractors issued by Spiegel. The safety rules for contractors
provide general rules and regulations for all contractors and
subcontractors. The rules require contractors to comply with all
relevant safety regulations of the Occupational Safety and Health Act
of 1970 (OSHA) (29 U.S.C. 651 et seq. (1988)) to be responsible for
the safety of their employees, and to carry the requisite liability
insurance.
 Likewise, the subcontract for demolition and clean-up work
between Oliveri and the subcontractor, G.M. Wrecking, held G.M.
Wrecking responsible for all safety precautions, including compliance
with OSHA requirements. The contract also specifically provided that
G.M. Wrecking was to "at all times keep the premises free from
accumulation of debris arising out of his operations to the Work."
 Apostal first argues that Spiegel's contractual authority to
terminate the contract and issue change orders gave Spiegel authority
to stop the work for safety reasons. Spiegel does not dispute that it
had contractual authority to terminate for default or to issue work
change orders. In fact, Spiegel issued one change order to add
additional work to the project. Rather, Spiegel contends that, once
the contract was signed, Spiegel had no further involvement in the
project other than to see that it was completed according to budget.
 The right to stop the work, however, without more, is not
conclusive in resolving whether a person "has charge" of the work. 
Cockrum v. Kajima International, Inc., 163 Ill. 2d 485, 493, 645
N.E.2d 917, 921 (1994). We agree with the Burger court that, while
Spiegel had the contractual right to make change orders and to stop
the work for material defaults, we do not find "a factual link between
this inchoate right and the right to control the construction or
suspend work for safety reasons." Burger v. Prairie Development,
Ltd., 218 Ill. App. 3d 814, 825, 578 N.E.2d 1113, 1119 (1991). 
Spiegel was not in a position to assure worker safety or to alleviate
equipment deficiencies or improper work habits. Fitzpatrick v. Perry
Drugs Co., 213 Ill. App. 3d 529, 535, 572 N.E.2d 1103, 1107 (1991).
 Apostal also argues that Spiegel's issuance of safety rules gave
Spiegel contractual authority to control the work for safety reasons. 
Spiegel contends that the safety rules for contractors, without more,
do not evidence Spiegel "having charge" of the worksite. We agree
with Spiegel that it did not maintain contractual authority to
supervise the worksite or responsibility for job safety. 
 In Cockrum v. Kajima International, the Illinois Supreme Court
found the design builder of an automobile plant to be "in control" of
the work when the contract held the design builder responsible for
"initiating, maintaining and providing supervision of safety
precautions and programs in connection with the Work." Cockrum, 163
Ill. 2d at 490, 645 N.E.2d at 919. The court emphasized that the
design builder was contractually required "to take reasonable
precautions for the safety of `all employees on the Work ". Cockrum,
163 Ill. 2d at 493, 645 N.E.2d at 921. Accord Steuri v. Prudential
Insurance Co., 282 Ill. App. 3d 753, 763, 668 N.E.2d 1066, 1072
(1996).
 In this case, Spiegel was not contractually responsible for the
safety of the worksite. Within the 36 explicit safety rules,
reference is made to various Spiegel personnel to whom contractors may
turn for assistance. One rule requires Spiegel personnel to be
notified before any explosives are used. Another requires
notification before any burning or welding is conducted. Close
examination of these provisions demonstrates that the rules are
written in a manner to notify Spiegel of work being conducted and to
allow Spiegel to assist with, but not control, safety issues. 
 The only affirmative right maintained by Spiegel appears in rule
1, which allows Spiegel to hire someone to clean up new construction
or repair sites if the contractor fails to clean up. This provision
allows Spiegel to assert its contractual right to performance; it does
not direct the contractor how to perform the work. Rather, if the
work is not done, Spiegel may hire someone else to complete it. In
comparison to the contractual provisions at issue in Cockrum, the
safety rules for contractors, issued by Spiegel, do not make Spiegel
contractually responsible for worksite safety. Indeed, the rules are
replete with references to the contractor's safety responsibilities. 
Without more, Spiegel was not "in charge" by virtue of its work
contract. The trial court properly held, as a matter of law, that the
facts did not support a determination that Spiegel was "in charge of"
the demolition project for purposes of Structural Work Act liability.
 Apostal also argues that Spiegel is liable based on common law
negligence. As a threshold matter, however, "whether defendant had
charge of the work determines whether or not there was a duty owed to
plaintiff." Axen v. Ockerlund Construction Co., 281 Ill. App. 3d 224,
232, 666 N.E.2d 693, 698 (1996). If there is not a sufficient nexus
to find a defendant "in charge of" the work under the Structural Work
Act, then there likewise is no common law duty in tort. Burger v.
Prairie Development, Ltd., 218 Ill. App. 3d 814, 827, 578 N.E.2d 1113,
1121 (1991). Because we agree with the trial court's determination
that Spiegel did not have charge of the work, we find Spiegel did not
owe a common law duty of care to Ramos.
 Apostal's final argument is that, because demolition is an
ultrahazardous activity, Spiegel owed a nondelegable duty of care to
Ramos. We disagree. Apostal has erroneously combined two tort
standards to suggest that anytime an owner contracts for an
ultrahazardous activity, the owner has a nondelegable duty to take
special precautions to avoid all risks inherent in the activity. Such
is not the case. 
 The Restatement of Torts explains that strict liability may be
imposed as a matter of law on persons, including property owners and
employers, who undertake an activity which is, by definition, either
ultrahazardous or abnormally dangerous. Restatement (Second) of Torts
519, 520 (1977) (abnormally dangerous activities); Restatement
(First) of Torts 519, 520 (1938) (ultrahazardous); see Restatement
(Second) of Torts 427A (1977) (employer liability for abnormally
dangerous activities). The rationale is that strict liability "is
ordinarily reserved for abnormally dangerous activities for which no
degree of care can truly provide safety." Miller v. Civil
Constructors, Inc., 272 Ill. App. 3d 263, 270, 651 N.E.2d 239, 245
(1995). Strict liability, however, was not pleaded in Apostal's
complaint and is not relevant to the instant issue.
 The Restatement (Second) of Torts also teaches that liability,
sounding in negligence, may be imposed on principals for injuries
caused when an independent contractor performs a dangerous or
inherently dangerous activity. The principal's liability may be
either direct or vicarious. See, e.g., Restatement (Second) of Torts
413, 416, 427 (1977). The cases explain that when a principal
contracts with an independent contractor for work that is dangerous or
inherently dangerous, the principal has a nondelegable duty to take
special precautions to guard against the peculiar risks attendant to
that activity. Bear v. Power Air, Inc., 230 Ill. App. 3d 403, 409,
595 N.E.2d 77, 81-82 (1992); Central Trust & Savings Bank v. Toppert,
198 Ill. App. 3d 562, 565-66, 554 N.E.2d 820, 823 (1990); Johnson v.
Central Tile & Terrazzo Co., 59 Ill. App. 2d 262, 277, 207 N.E.2d 160,
167 (1965); Van Auken v. Barr, 270 Ill. App. 150, 153 (1933). 
 This nondelegable duty, however, runs to third parties, not to
employees of the independent contractor. No Illinois case has imposed
a nondelegable duty of care on a principal for injuries to the
contractor's employee. While often cited as support for this
proposition, Chicago Economic Fuel Gas Co. v. Myers, an 1897 Illinois
Supreme Court case, is factually distinguishable. Chicago Economic
Fuel Gas Co. v. Myers, 168 Ill. 139, 48 N.E. 66 (1897).
 In Chicago Economic Fuel, a contractor's employee was injured
when engaged in installation of natural gas pipe lines under Chicago
streets. Chicago Economic Fuel, 168 Ill. at 142, 48 N.E. at 67. The
court held the principal gas company liable on several grounds. 
First, the contractor's foreman negligently supervised the worker. 
Chicago Economic Fuel, 168 Ill. at 140, 48 N.E. at 67. In addition,
the gas company was independently negligent for prematurely running
the natural gas through the pipes. Chicago Economic Fuel, 168 Ill. at
144, 48 N.E. at 68. And finally, the court relied on the alter-ego
status of the gas company and the contractor. Chicago Economic Fuel,
168 Ill. at 145, 48 N.E. at 68. The court in Chicago Economic Fuel
did not impose a nondelegable duty of care on the principal. Instead,
despite the injury occurring in an inherently dangerous undertaking,
the court grounded its holding on the negligence of the gas company.
 Illinois cases that have imposed a nondelegable duty of care on
principals involved liability to passersby or adjacent property
owners. Benesh v. New Era, Inc., 207 Ill. App. 3d 1049, 1052-53, 566
N.E.2d 779, 782 (1991); Van Auken v. Barr, 270 Ill. App. 150, 153
(1933); see Bezan v. Chrysler Motors Corp., 263 Ill. App. 3d 858, 864,
636 N.E.2d 1079, 1083 (1994) (refusing to impose nondelegable duty on
principal); Johnson v. Central Tile & Terrazzo Co., 59 Ill. App. 2d
262, 277, 207 N.E.2d 160, 167 (1965) (discussing duty of contractee
but refusing to find floor waxing inherently dangerous). See also
Anderson v. Marathon Petroleum Co., 801 F.2d 936 (7th Cir. 1986). As
further support, we note that all illustrations to the Restatement
refer to injuries occurring to third parties. See, e.g., Restatement
(Second) of Torts 413, Comment c, at 386; 416, Illustration 2, at
396; 427, Comments b and c, at 416 (1977). 
 Thus, as a matter of law, Spiegel is not liable for the injuries
suffered by Ramos. Accordingly, we affirm the trial court's grant of
summary judgment in favor of defendant-appellee Spiegel, Inc., on all
counts.
 Affirmed.
 HOFFMAN and CAHILL, JJ., concur.